UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EXECUTIVE AMBULATORY
SURGICAL CENTER, LLC, as
assignee of TAMIKA BURRELL,

Case No. 18-cv-14094

              Plaintiff,

Paul D. Borman
United States District Judge

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

              Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 9)

This case involves a medical provider's claims for the payment of no-fault insurance benefits stemming from an August 19, 2014 motor vehicle accident in which a car driven by Tamika R. Burrell ("Burrell") was struck in the rear by a hit and run driver and then pushed into a pickup truck in front of her and she sustained bodily injuries. Following the accident, Burrell sought treatment from a number of medical providers, including Plaintiff Executive Ambulatory Surgical Center, LLC ("Executive Ambulatory"). During the course of that treatment, Burrell assigned her statutory rights to collect no-fault benefits to several of her providers, including Executive Ambulatory, who now attempts to recover no-fault insurance benefits

from Burrell's insurance company, Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). Defendant now moves for summary judgment, arguing that Plaintiff's claims are barred under the doctrines of res judicata and collateral estoppel. The matter is fully briefed and the Court held a hearing on February 6, 2020. For the reasons that follow, the Court **DENIES** the Defendant's motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

#### 1. August 19, 2014 Motor Vehicle Accident

On August 19, 2014, Burrell was involved in a motor vehicle accident in which she claims to have sustained accidental bodily injuries. (ECF No. 1, Notice of Removal Ex. A, Compl. ¶ 10, PgID 9.) Burrell alleges she was struck from behind by a vehicle that fled the scene and was pushed into a 2013 Ram pickup truck driven by Christopher Wujeck. (ECF No. 9-3, State of Michigan Traffic Crash Report ("Crash Report").) Mr. Wujeck was not injured, but Burrell claimed injuries as a result of the accident and was taken to Southfield Providence Hospital. (*Id.*) Emergency room records indicate that Burrell was transported from the scene of the collision "with full C-Spine precaution" and examination revealed complaints of "pain along the entire cervical spine without focality" and "tenderness" along the thoracic and lumbar spine and left lateral hip. (ECF No. 13-5, Providence

Emergency Room Records, PgID 358-59.)  She was subsequently discharged home that same day with prescriptions for Bactrim and Motrin and given a note that she could return to work the next day.  (*Id.* PgID 357.)

Burrell was insured with Defendant State Farm under a no-fault insurance policy at the time of the accident.  (Compl. ¶¶ 9-10, PgID 9.)  She sought to recover no-fault personal injury protection ("PIP") benefits from State Farm as a result of the accident.

## 2. Burrell's Assignment of Her Statutory Rights

Following the accident, Burrell sought treatment from a number of medical providers, including, but not limited to, Michigan Rehabilitation Specialists of Fowlerville LLC, d/b/a ATI Physical Therapy ("ATI") and Plaintiff Executive Ambulatory.  (*See* ECF Nos. 13-6 to 13-12, Burrell's Medical Records.)  Dr. Lucia Zamorano, a Board Certified neurosurgeon, treated Burrell and performed three surgeries on her: (1) on February 9, 2016, anterior cervical disc fusion and decompression of the spinal cord at the C4-C5 and C5-C6 levels; (2) on September 18, 2018, anterior disc fusion and decompression of the nerve root at C3-C4 with a revision of the previous disc fusion from C4 to C6; and (3) on March 11, 2019, discectomy and fusion of the L3-L4 level of her lumbar spine, with decompression of the nerve root.  (ECF Nos. 13-10 to 13-12.)  Plaintiff asserts that the latter two

procedures were performed at Executive Ambulatory and are the subject of the present claim before the Court. (Pl.'s Resp. at 6, PgID 318.)

During the course of her treatment, Burrell assigned her statutory rights to collect no-fault benefits to several of her providers, including to ATI and Plaintiff Executive Ambulatory, for the services they rendered. (ECF No. 9-5, Assignments.)

### 3. ATI's February 1, 2017 Lawsuit

On February 1, 2017, ATI filed a lawsuit against State Farm in the 46th District Court in Oakland County arising out of the August 19, 2014 motor vehicle accident and seeking to collect payment of no-fault PIP benefits for the physical therapy services it rendered to Burrell. On May 25, 2017, the Michigan Supreme Court issued its opinion in *Covenant Medical Center, Inc. v. State Farm Mutual Automobile Insurance Company*, 500 Mich. 191 (2017), holding "that healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act." *Id.* at 217-18. The Court clarified, however, that its decision "is not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id.* at 217 n.40. (citations omitted). State Farm then filed a motion for summary disposition and argued that ATI did not have a direct cause of action against it pursuant to *Covenant*. In response to State Farm's motion, ATI produced several assignments of rights signed by Burrell. The trial court held that

the language of the assignments was insufficient to allow ATI to proceed with the case and granted summary disposition in favor of State Farm. (ECF No. 9-6, ATI Trial Court Order Granting MSD.)

ATI appealed the ruling to the Oakland County Circuit Court, which reversed the trial court's ruling and held that the assignments were valid and that ATI was permitted to pursue its case as assignee of Burrell. (ECF No. 9-7, ATI Appellate Order.) ATI then filed an amended complaint on August 24, 2018, based upon the assignment of rights previously provided by Burrell. (ECF No. 9-8, ATI Amended Compl.) On March 19 and 20, 2019, ATI, as assignee of Burrell, took its case against State Farm to trial in the 46th District Court, and on March 20, 2019, the jury returned a verdict of no-cause of action in favor of State Farm, finding that Burrell did not sustain an injury in the August 19, 2014 automobile accident. (ECF No. 9-9, ATI Judgment of No Cause of Action.) Specifically, the jury form read as follows:

### M Civ JI 67.01 Form of Verdict No-Fault First-Party Benefits Action

We, the jury, make the following answers to the questions submitted by the Court:

QUESTION NO. 1: Did Tamika Burrell sustain an accidental bodily injury?

A. Answer: **_NO_** (yes or no)
B. If your answer is "no," do not answer any further questions.

(*Id.* at PgID 164.)

#### 4. Burrell's August 10, 2018 Lawsuit

On August 10, 2018, Burrell filed her own lawsuit against State Farm arising out of the August 19, 2014 automobile accident in the Wayne County Circuit Court, broadly seeking PIP benefits, including wage loss benefits, replacement service expenses, medical expenses, and attendant care services, without any further identification of what those expenses are or the amount of those expenses. (ECF No. 9-10, Burrell Compl.)[1] On April 22, 2019, following the no-cause verdict in the *ATI* lawsuit, State Farm filed a motion for summary disposition based upon the doctrines of collateral estoppel and res judicata. (ECF No. 9-11, Defendant's MSD.) State Farm argued that the finding of no injury in the *ATI* case was a collateral estoppel or res judicata bar to Burrell's claims for no-fault benefits related to the August 19, 2014 motor vehicle accident. (*Id.*) The Wayne County Circuit Judge heard oral arguments on June 24, 2019, and on June 27, 2019 entered an order granting State Farm's motion "for the reasons set forth by the Court on the record at the hearing of the motion" and dismissing Burrell's case with prejudice. (ECF No. 9-12, Order Granting Def.'s MSD.)

---

[1] Defendant points out that this was Burrell's *second* lawsuit arising out of the August 19, 2014 accident. She previously brought Case No. 2:16-cv-10508 before this Court, which was voluntarily dismissed based on mutual acceptance of the case evaluation award in July 2017. Plaintiff states that subsequent to that settlement, Burrell underwent additional treatment related to the injuries she sustained in the

## B.     Procedural History

On November 21, 2018, Plaintiff Executive Ambulatory filed the present action against Defendant State Farm in the Oakland County Circuit Court.  (Compl.)  This action was removed to this Court on December 31, 2018.  (ECF No. 1, Notice of Removal.)

On September 19, 2019, Defendant State Farm filed its motion for summary judgment, arguing that the *ATI* jury verdict and judgment of no-cause of action, as well as the summary disposition order in the *Burrell* action, serve as a res judicata and collateral estoppel bar to Plaintiff's claims in this lawsuit against it.  (ECF No. 9, Def.'s Mot. S.J.)

Plaintiff responded to Defendant's motion on October 31, 2019, asserting that the central issue in this lawsuit is whether the services it provided were reasonable and necessary for the treatment of injuries Burrell sustained in the August 19, 2014 accident, and that this claim "belongs exclusively and solely to Plaintiff, and was not, and could not have been, litigated in either the ATI Physical Therapy lawsuit," which "concerned only the reasonableness and necessity of *physical therapy* services rendered to Burrell" or "Burrell's second generation suit filed in 2018." (*Id.* (emphasis in original).)  Plaintiff contends that no evidence regarding the surgeries

---

August 19, 2014 accident, and that this additional treatment generated several additional lawsuits for no-fault benefits, including the present lawsuit, the *ATI* lawsuit and the *Burrell* lawsuit.  (Pl.'s Resp. at 1, PgID 313.)

at issue here was presented in the *ATI* lawsuit, and that thus its "claim here is entirely separate, distinct, and distinguishable from the claim ATI presented in the 46th District Court." (*Id.* at 2, PgID 314.)

Defendant filed a reply brief on November 13, 2019, re-asserting its arguments that it has established all required elements of both res judicata and collateral estoppel, and that its previous settlement with Burrell is not an admission that Burrell was injured or otherwise a bar to its motion. (ECF No. 16, Def.'s Reply.)

## II.     LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*,

353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be

admissible at trial.  *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## III.   ANALYSIS

The issue to be decided is whether the *ATI* jury verdict and judgment of no-cause of action in the 46th District Court, as well as the summary disposition order in the *Burrell* Oakland County Circuit Court lawsuit which appears to be based on the *ATI* jury verdict, serve as a res judicata or collateral estoppel bar to Plaintiff's claims here.  In deciding whether a state court judgment will be given preclusive effect in a federal court, the federal court looks to that state's res judicata and collateral estoppel laws.  *AuSable River Trading Post, LLC v. Dovetail Solutions, Inc.*, 874 F.3d 271, 274 (6th Cir. 2017); *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir. 2004).

### A.      Res Judicata (Claim Preclusion)

In Michigan, the doctrine of res judicata, or claim preclusion, "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first [case]."  *Adair v. Michigan*, 470 Mich. 105, 121 (2004) (citing *Sewell v. Clean Cut Mgmt., Inc.*, 463 Mich. 569, 575 (2001)). The Michigan Supreme Court interprets the doctrine of res judicata "broad[ly]," barring claims already litigated and "every claim arising from the same transaction

that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

The Michigan courts also broadly define the concept of privity:

> To be in privity is to be so identified in interest with another party that the first litigant represents the *same legal right* that the later litigant is trying to assert. The outer limit of the doctrine traditionally requires both [1] a "substantial identity of interests" and [2] a "working functional relationship" in which [3] the interests of the nonparty are presented and protected by the party in the litigation.

*Bates v. Twp. of Van Buren*, 459 F.3d 731, 734-35 (6th Cir. 2006) (emphasis added, quoting *Adair*, 470 Mich. at 121).

### 1. Whether a Prior Action Was Decided on the Merits

For *Adair's* first res judicata prong, the parties do not dispute that the prior actions between ATI and State Farm, ending in a jury verdict and no-cause determination, and between Burrell and State Farm, ending in a grant of summary disposition with prejudice based on that *ATI* verdict, were decided on the merits.

### 2. Whether Both Actions Involve the Same Parties or Their Privies

Regarding the second prong – whether both actions involve the same parties or their privies – Defendant argues that "[t]he parties in all three causes of action are identical." (Def.'s Mot. S.J. at 13, PgID 100.) However, Plaintiff Executive Ambulatory was not a party to either the *ATI* or the *Burrell* state court lawsuits, both of which were filed *before* either surgery at issue in this lawsuit occurred. Thus, the issue is whether Plaintiff, as an assignee of Burrell, was in "privity" with either ATI,

also an assignee of Burrell, or Burrell such that the actions could be said to have involved "the same parties or their privies." *Adair*, 470 Mich. at 121.

Michigan courts have defined "privity" as "mutual or successive relationships to the same right or property, or such an identification of interest of one person with another as to represent the same right." *Sloan v. Madison Heights*, 425 Mich. 288, 295 (1986) (quotation marks and citation omitted). "Privity" between a party and a non-party "traditionally requires both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation." *Adair*, 470 Mich. at 122 (citations omitted). "A person who is not a party to a suit generally has not had a full and fair opportunity to litigate the claims and issues settled in that suit," *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotations omitted), and "the Supreme Court is a stickler about the due-process rights of nonparties to litigation." *Amos v. PPG Indus., Inc.*, 699 F.3d 448, 453 (6th Cir. 2012). However, this rule against nonparty preclusion is subject to six recognized exceptions, the second of which is applicable and provides that nonparty preclusion may be justified where there is a "pre-existing 'substantive legal relationship[]'" (such as the assignor-assignee relationship) between the party in the first case and the party in the second case such that it can be said that the party had a "full and fair opportunity" to litigate the claims in the first matter. *Sturgell*, 553 U.S. at 893-94.

Defendant argues that Burrell and her assignees, ATI and Executive Ambulatory, are in contractual privity due to the assignments and, as assignees, both "stood in the shoes" of Plaintiff, and that both ATI and Executive Ambulatory were assigned and represented the same legal right – *i.e.,* entitlement to no-fault benefits. (Def.'s Mot. S.J. at 15, PgID 102.) Defendant continues that Michigan Courts have held that "a provider's claim to PIP benefits … is derivative to the injured party's claim to PIP benefits," *Dawoud v. State Farm Mut. Auto. Ins. Co.*, 317 Mich. App. 517, 523 (2016), and thus if the insured's claim is substantively barred on the merits, any derivative claims necessarily will fail as well. (Def.'s Mot. S.J. at 16, PgID 103.) Defendant further argues in its reply brief that the assignment creates a "substantive legal relationship" between Plaintiff and Burrell, which serves as an exception to the rule against nonparty preclusion. (Def.'s Reply at 6-8, PgID 454-56.)

Plaintiff responds that this prong is not satisfied because it "clearly was not involved in the *ATI* lawsuit, and Defendant must show that ATI and Executive [Ambulatory] are privies." (Pl.'s Resp. at 9, PgID 321.) Plaintiff argues that its interests were not protected in either the *ATI* trial or Burrell's own suit, as neither of those parties had control over the claim it presents here. Plaintiff asserts that, upon assignment, the subject claim belonged entirely to Plaintiff. (*Id.* at 9-10, PgID 321-22.)

13

On September 24, 2019, another Court in this District issued an opinion in a case involving very similar facts and arguments to those asserted here. *See Massengale v. State Farm Mut. Auto. Ins. Co.*, No. 2:18-CV-11366, 2019 WL 4640307 (E.D. Mich. Sept. 24, 2019) (Berg, J.). In fact, Defendant State Farm is represented by the same counsel in both the *Massengale* case and the present lawsuit. In *Massengale*, the plaintiff Jennese Massengale went to a chiropractor after getting into an auto accident and she assigned her insurance rights to recover the costs of that treatment to the chiropractor. *Id.* at *1. The chiropractor later sued the insurance company, State Farm, in state court to recover the costs of the chiropractic services it rendered, but State Farm won the case, the jury finding no injury. *Id.* at *1-2. Massengale had separately brought the instant suit against State Farm and the opposing driver to recover many other costs, and State Farm sought summary judgment in its favor, arguing that the prior jury verdict acted as a res judicata and/or collateral estoppel bar to Massengale's claims. *Id.* The Court held a hearing on the motion (as well as a motion for leave to file first amended notice of affirmative defenses) on May 16, 2019, and directed State Farm to file the transcript of the prior jury trial with the Court. *Id.* at *2.

On September 24, 2019, United States District Judge Terrence Berg issued an Opinion and Order granting the motion for leave to amend affirmative defenses (to assert res judicata and collateral estoppel) but denying the motion for summary

judgment. State Farm had argued, as it does in this case, that plaintiff's claims were barred by res judicata because the chiropractor, as Massengale's assignee, "stood in the shoes" of Massengale and there was a "clear substantial identity of interests, and a working functional relationship in which Massengale's interests were presented and protected by" the chiropractor in its lawsuit. *Id.* at *5. Massengale responded that she only assigned a portion of her no-fault PIP benefits to the chiropractor and that she therefore was not "so identified in interest" with that provider that it presented the "same legal right" that she was trying to assert. *Id.*

The Court looked at the language of the assignment to the chiropractor, found the assignment "clearly limited" to the "Services" the chiropractor provided to plaintiff, and thus determined that it was only a "partial assignment" of plaintiff's rights to no-fault PIP benefits and that there was not a "substantial identity of interests" between plaintiff and the chiropractor. *Id.* at *5-6. The Court reasoned that, even though State Farm "fully litigated Plaintiff's medical history and proffered testimony from three independent medical experts who testified to their belief that Massengale was not injured *at all* by the accident, the proper inquiry is not whether State Farm – but rather whether Plaintiff, as a non-party – had a 'full and fair opportunity to litigate' in the first action," and that "[i]n light of the limited scope of Plaintiff's assignment of rights to" the chiropractor, there was not a "sufficient 'identity of interests' to conclude that privity existed for purposes of Plaintiff's new

claim for no-fault PIP benefits[.]" *Id.* at *6. Because it found that both actions did not involve "the same parties or their privies" and thus found that Massengale's claim was not barred by res judicata on that ground, the Court did not address the third res judicata prong. *Id.* at *7.[2]

> Turning to State Farm's collateral estoppel argument, Judge Berg found that:
>
> Regardless of whether State Farm attempted to prove that Plaintiff was not injured at all by the motor vehicle accident,—and did so, in part, by presenting a number of Massengale's medical records to the jury that were unrelated to her injuries treated by [the chiropractor]—Plaintiff did not have a "full and fair opportunity" to prove that she was injured in the accident; [the chiropractor] was only obligated to prove that her spine and neck had been injured in a manner that necessitated the need for its chiropractic services.

*Id.* at *8; *see also id.* at *7 ("Although [the chiropractor] was obligated to litigate the issues of injury and causation to collect no-fault PIP benefits on behalf of Plaintiff, that obligation did not extend beyond those injuries [the chiropractor] treated and whether the motor vehicle accident cause *those* injuries.") (emphasis in original). The Court then reasoned that "it cannot be said that the issues of injury and causation related to other areas of Massengale's body … were fully and fairly litigated by [the chiropractor]." *Id.* at *8. It concluded therefore that the doctrine of collateral estoppel does not bar plaintiff's claims except to the extent she seeks any benefits or damages related to services rendered by the chiropractor. *Id.*

---

[2] State Farm has filed a motion for reconsideration of the Court's order in *Massengale*, which remains pending.

Turning to this case, Defendant has not demonstrated whether Plaintiff Executive Ambulatory and ATI, as independent assignees of Burrell, are in privity with *each other*. Plaintiff and ATI were each separately assigned a different portion of Burrell's no-fault PIP benefits related to the specific services they each provided, on different dates. However, Plaintiff is in privity with Burrell, at least with regard to any claim for PIP benefits related to the services Plaintiff provided to Burrell, according to the Assignment. *See Redburn v. Farmer Ins. Exch.*, No. 345216, 2020 WL 90986, at *3 (Mich. App. Jan. 7, 2020) (finding plaintiff and Clear Imaging were not in privity "beyond the $20,400 Clear Imaging claimed in PIP benefits").

Second, as in *Massengale*, there has been no showing that Plaintiff had a "full and fair opportunity" to litigate its claims in either the *ATI* or *Burrell* lawsuits, or that either ATI or Burrell were "so identified in interest" with Plaintiff that ATI's position in the district court trial and Burrell's position in the circuit court action in reliance on the ATI decision, both filed *before* the surgeries at issue here even occurred, represented Plaintiff Executive Ambulatory's legal right to the benefits it seeks based on the September 2018 and March 2019 surgeries. *See Massengale*, 2019 WL 4640307, at *6 (citing *Adair*, 470 Mich. at 121-22). Looking at the language of the assignments themselves (as the Court did in *Massengale*), those assignments were limited (like in *Massengale*). Burrell assigned to ATI "[her] therapy benefits … for the services in which [she] receive[s] and authorize[s] [her]

insurance carrier to make payments to ATI on [her] behalf." (ECF No. 9-5, PgID 129, 140-41.) Burrell assigned to Executive Ambulatory "the right to enforce payment of charges incurred for Services," and defines "Services" as "treatment, products, service and/or accommodations … from Assignee [Executive Ambulatory]." (ECF No. 9-5, PgID 143.) Thus, as in *Massengale*, "[t]he language of [each] assignment is clearly limited" and "demonstrates that [Burrell] was not assigning *all* of her rights to receive no-fault PIP benefits to" either ATI or Plaintiff Executive Ambulatory such that a "substantial identify of interests" existed between them, because both ATI and Plaintiff Executive Ambulatory could only collect Plaintiff's no-fault benefits for those limited services each rendered to her at different times prior to the respective assignments. *See Massengale*, 2019 WL 4640307, at *6.

Specifically, the prior state district court action involved ATI as plaintiff seeking to have *ATI's* bill for physical therapy services that *it* provided to Burrell paid by Defendant State Farm as a PIP insurer. The prior circuit court action was brought by Burrell directly on August 10, 2018 and sought unidentified PIP benefits, including wage loss benefits, replacement service expenses and attendant care services in addition to unidentified medical expenses. (ECF No. 9-10, Burrell Compl.) Neither of these actions involved Plaintiff Executive Ambulatory in any manner or a claim for the same benefits sought here pertaining to two surgeries

performed on September 18, 2018 and March 11, 2019. Indeed, both Burrell and ATI filed their respective state court lawsuits *before* either of those surgeries were performed, and thus those lawsuits could not have been seeking the benefits at issue in this suit. Thus, it does not appear that ATI or Burrell could have raised the claims at issue here, which arose after their respective state court lawsuits were filed and which were expressly assigned to Plaintiff, and thus Plaintiff did not have a "full and fair opportunity to litigate" those prior actions.

Accordingly, because the two state court actions and this case did not involve "the same parties or their privies," and thus not all of the res judicata elements have been met, the doctrine of res judicata does not bar Plaintiff's present claim against State Farm.

### 3. Whether the Matter in the This Case Was, or Could Have Been, Resolved in the First Case

Defendant argues that there is identity of claims between the *ATI* and *Burrell* lawsuits and this case because all involve exercising Burrell's statutory right to pursue collection of no-fault benefits arising out of the same August 19, 2014 automobile accident. (Def.'s Mot. S.J. at 11-12, PgID 98-99.) Defendant contends that while the bills for which they sought payment may have differed, the underlying claim for no-fault PIP benefits remains the same, and the burden of proof and initial questions presented to the jury remain the same – namely, (1) Did the plaintiff sustain an accidental bodily injury? and (2) Did the plaintiff's accidental bodily

19

injury arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle? (Def.'s Reply at 1-2, PgID 449-50.)

Plaintiff Executive Ambulatory responds that the rights assigned to it here for reimbursement of the September 2018 and March 2019 surgical procedures belonged to it, and not ATI or Burrell, and "constitute separate and distinct causes of action" that were not, and could not have been, asserted in either Burrell's or ATI's suit. (Pl's Resp. at 7-8, PgID 319-20.) Plaintiff argues that the only evidence presented in the *ATI* trial related to physical therapy services, and no evidence regarding the surgeries that form the basis of this lawsuit was presented. (*Id.* at 9, PgID 321.) Defendant does not dispute this in its motion or reply brief.

Defendant over-simplifies the "identity of claims" prong by broadly stating that Plaintiff, ATI and Burrell all sought no-fault benefits, while at the same time acknowledging that the cases sought to collect different payments for different bills for services incurred at different times. "Michigan's no-fault act, M.C.L. § 500.3101 *et seq.,* does not permit claimants to file an action for benefits 'before they have become due under the act.'" *Shures v. State Farm Mut. Auto. Ins. Co.*, No. 09-10514, 2009 WL 3052239, at *3 (E.D. Mich. Sept. 18, 2009) (Cox, J.) (citing *Harris v. Mid-Century Health Ins. Co.*, 115 Mich. App. 591, 596 (1982)). PIP benefits are "payable" as loss "accrues" and "benefits payable 'accrue not when the injury occurs but as the allowable expense, work loss or survivor's loss is incurred.'" *Id.* (citing

Mich. Comp. Laws §§ 500.3142, 500.3110(4)); *see also North Shore Injury Ctr., Inc. v. Home-Owners Ins. Co.*, No. 340357, 2019 WL 939031, at *3 (Mich. App. Feb. 26, 2019) ("Because each payments presents a new claim, the no-fault act necessarily permits multiple suits to enforce the payments."). In *Shures*, 2009 WL 3052239, at *3, the Court explained that, although the prior action was decided on the merits and both actions involved the same parties, because the plaintiff could not have brought a claim for benefits, which had yet to accrue, in the prior action, the present action could not have been "resolved in the first [action]" and the plaintiff's claim was not barred by res judicata. *Id.* (holding, however, that the plaintiffs' claims were barred by collateral estoppel because both actions involved the same parties or their privies). Similarly, here, because neither ATI nor Burrell could have brought a claim for the benefits Plaintiff seeks here, which had yet to accrue at the time those actions were filed, this suit could not have been resolved in the prior actions and res judicata does not bar Plaintiff's claim for this reason as well.

### B. Collateral Estoppel (Issue Preclusion)

"Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding." *Radwan v. Ameriprise Ins. Co.*, 327 Mich. App. 159, 166 (2018) (citation omitted). Under Michigan law, the three elements of

collateral estoppel are: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the same parties or their privies had a full and fair opportunity to litigate the issues; and, (3) there was mutuality of estoppel. *Id.*; *see also Estes v. Titus*, 481 Mich. 573, 585 (2008).

### 1. Whether a Question of Fact Essential to the Judgment Was Litigated and Determined by a Valid and Final Judgment

Here, the parties to do not dispute that there appears to be a question of fact essential to the judgment that was litigated and determined by a valid and final judgment – the jury's determination in the *ATI* district court case that Burrell did not sustain an accidental bodily injury. Thus, the first element of collateral estoppel is established.

### 2. Whether the Same Parties or Their Privies Had a Full and Fair Opportunity to Litigate the "No Injury" Issue in the Prior Action

However, as explained above, the same parties or their privies did not have a full and fair opportunity to litigate the "no injury" issue in the *ATI* lawsuit. Defendant only argues in its motion that "Plaintiff, ATI and Tamika Burrell are all standing in the exact same shoes; in this case the shoes of Tamika Burrell" and that "there is no question that *Burrell* through her assignee, ATI, had a full and fair opportunity to litigate the issue." (Def.'s Mot. S.J. at 21, PgID 108 (emphasis added)). Defendant does not otherwise discuss whether *Plaintiff Executive Ambulatory*, as a separate assignee of Burrell, had that opportunity.

As above, "privity" in the collateral estoppel context is defined as "mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Redburn v. Farmer Ins. Exch.*, No. 345216, 2020 WL 90986, at *3 (Mich. App. Jan. 7, 2020) (citing *Sloan v. Madison Heights*, 425 Mich. 288, 295 (1986) (quotation marks and citation omitted)).  It requires "both a substantial identity of interests and a working or functional relationship in which the interests of the non-party are represented and protected by the party in the litigation." *Id.* (citation omitted).

On January 7, 2020, the Michigan Court of Appeals issued a decision in a case with very similar facts to this one, reversing the circuit court's order granting summary disposition to the defendant on the basis of collateral estoppel.  *Redburn v. Farmer Ins. Exch.*, No. 345216, 2020 WL 90986 (Mich. App. Jan. 7, 2020).  In *Redburn*, the plaintiff claimed he was injured in a September 4, 2015 accident involving an automobile.  He filed suit for PIP benefits in the state circuit court on May 26, 2016.  One of plaintiff's medical providers to whom he assigned his right to receive no-fault benefits, Clear Imaging, filed a separate complaint in the state district court on August 11, 2017.  *Id.* at *1.  A trial was held in Clear Imaging's matter on November 27, 2017, at which the district court granted defendant's motion for directed verdict, stating in the order that plaintiff was not involved in a motor vehicle accident on September 4, 2015 and did not sustain accidental bodily injury

arising out of the ownership, operation, maintenance, or use of a motor vehicle on that date. *Id.* The circuit court subsequently granted the defendant's motion for summary disposition in the plaintiff's case on the ground of collateral estoppel, based on the Clear Imaging decision. *Id.*

On appeal, the Michigan Court of Appeals explained that, generally, for collateral estoppel to apply, three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. *Id.* at *2 (citing *Radwan*, 327 Mich. App. at 166). The Court of Appeals found that the first element was satisfied as the district court's order and findings were essential to judgment. *Id.* The court also found that the third element – mutuality of estoppel – was established because a healthcare provider "stands in the shoes" of an insured when seeking no-fault benefits from an insurer and as a result Clear Imaging was a privy of plaintiff, and had the district court denied defendant's motion for directed verdict, and the jury found that plaintiff was involved and injured in a September 4, 2015 motor vehicle accident, defendant would have been bound by the jury's determination. *Id.* at *2-3 (citing *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 684-85 (2004)).

However, the second element – that the same parties must have had a full and fair opportunity to litigate the issue – was not met. *Id.* at 3-5. The *Redburn* court noted that the district court action involved Clear Imaging seeking to have *its* bill for services paid for a single day of services, while the circuit court action was brought by plaintiff directly, seeking $135,435.98 in PIP benefits *separate* from any benefit received by or payment owed to Clear Imaging. *Id.* at *3. Thus, although both actions involved the same defendant, "their actions did not involve the same plaintiffs as parties." *Id.* The Court found that "it is only to the extent of Clear Imaging's claim for payment of PIP benefits for services rendered to plaintiff that plaintiff and Clear Imaging were privies." *Id.* Otherwise, the plaintiff's interests and claims in the circuit court action "were not presented and protected in the district court action." *Id.* (finding that "Clear Imaging did not stand in the shoes of plaintiff with respect to plaintiff's additional claim to $135,435.98 in PIP benefits" and "plaintiff was not in privity with Clear Imaging beyond the $20,400 Clear Imaging claimed in PIP benefits").

In addition, the court noted that, "[e]ven if plaintiff and Clear Imaging were in complete privity," plaintiff, and the plaintiff's other medical providers, were not called as a witnesses in Clear Imaging's trial and thus did not have a "full and fair opportunity" to participate in that proceeding. *Id.* at *4. The Court recognized that "'[d]etermining whether a [party] has had a full and fair chance to litigate [an issue]

in an earlier case is of necessity not a simple matter [because] … as so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, [the] decision will necessarily rest on the trial court's sense of justice and equity.'" *Id.* (quoting *Monat*, 469 Mich. at 683). The Court found that the "plaintiff did not have a full and fair opportunity to litigate his claims and underlying issues with respect to his claims" and that summary disposition based upon collateral estoppel was improper. *Id.* at *4-5 (noting that the "plaintiff's other medical providers … were not parties in Clear Imaging's action against defendant" and "[i]f plaintiff is not afforded the opportunity to litigate his entitlement to PIP benefits, he and other medical and service providers will be bound by a decision *that they were neither aware of not had the opportunity to fairly and fully participate in*.") (emphasis added). The Court finds this reasoning persuasive.

Similarly, in *Massengale*, discussed above, Judge Berg agreed that the rule against nonparty preclusion also bars the application of collateral estoppel to the plaintiff's claims because the plaintiff did not have a "full and fair opportunity" to prove that she was injured in the prior litigation, which was limited to the physical therapy clinic's treatment. *Massengale*, 2019 WL 4640307, at *7-8.

Here, Plaintiff Executive Ambulatory, as assignee of Burrell, did not have a "full and fair opportunity to litigate" its claims for PIP benefits, which had not even

accrued at the time either of the state court complaints were filed and which were not the subject of either the *ATI* or the *Burrell* state court litigation. Accordingly, the Court finds that Plaintiff's claim is not barred by collateral estoppel.

### 3. Mutuality of Estoppel

"[M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action." *Monat v. State Farm*, 469 Mich. 679, 685 (2004). Defendant argues that this third element is not at issue here because "the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively[.]" (Def.'s Mot. S.J. at 21-22, PgID 108-09 (quoting *Monat*, 469 Mich. at 691-92.) In *Monat*, plaintiff was rear ended in a motor vehicle accident and sued the negligent driver in tort. *Monat*, 469 Mich. at 681. Plaintiff received no-fault PIP benefits from State Farm and then sued State Farm when it terminated benefits. *Id.* The negligence claim against the opposing driver ended in a jury verdict of no cause finding that plaintiff was not injured. *Id.* State Farm sought to apply the negligence verdict/no cause finding to the no-fault PIP claim against it, by the doctrine of collateral estoppel, even though State Farm was not a party to that prior action. *Id.* The Michigan Supreme Court held that the jury's determination in the plaintiff's negligence claim, that plaintiff was not injured, collaterally estopped plaintiff from claiming PIP benefits, even though the no-fault insurer, State Farm, was not a party

to the negligence action, because the plaintiff *was* a party to the prior action and "already had a full and fair opportunity to litigate in a prior suit," holding "that, where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Id.* at 695.

That is not this case. Rather, for the same reasons as explained in *Massengale*, Plaintiff Executive Ambulatory was not a party in the *ATI* or the *Burrell* litigation, and Plaintiff is not in privity with ATI or with Burrell, beyond the claims asserted in this case. *See Massengale*, 2019 WL 4640307 at *8 ("While State Farm is asserting collateral estoppel defensively, Plaintiff was not a party in the Spine Rehab litigation, and … full privity did not exist between Plaintiff and Spine Rehab for purposes of proving the issues of injury and causation."). Accordingly, because Plaintiff did not have a "full and fair opportunity to litigate" the issue of whether Plaintiff was injured in the motor vehicle accident, the doctrine of collateral estoppel does not bar Plaintiff's claims. *See id.*

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment

(ECF No. 9) is **DENIED**.

IT IS SO ORDERED.

Dated:  March 3, 2020                              s/Paul D. Borman
                                                   Paul D. Borman
                                                   United States District Judge